FILED

00 FEB 24  AM 9: 48

U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VERNON MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.  CV 96-J-0870-S |
| | ) | |
| ELGIN SWEEPER COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED

FEB 2 4 2000

## MEMORANDUM OPINION

Currently before the Court is Defendant Elgin Sweeper Company's motion for summary judgment. (doc. 38)

### Undisputed Facts

The City of Greenville, Mississippi purchased two street sweepers, including an Elgin "Crosswind" Series GE Recirculating Air Sweeper, from Samson Equipment Company, a Birmingham, Alabama dealer of Elgin equipment. Deposition of Vernon Moore ("Moore Depo") at 44. The sweepers are used to remove debris from the pavement. Through the creation of air turbulence, debris is sucked from the pavement and delivered into a storage hopper located on the sweeper. Elgin Crosswind Operator's Manual ("Operator's Manual") at 1-7. The hopper can be raised and lowered by a

1

53

hydraulic lift system in order to dump the debris collected. Operator's Manual at 1-9. An auxiliary engine, independent of the truck engine, powers the hopper. *Id.*

The sweeper in question developed problems with its auxiliary engine and Samson dispatched the plaintiff to Greenville to repair the sweeper after numerous attempts by telephone to rectify the problem. Moore Depo. at 49-50. In the morning of October 12, 1995, Plaintiff and a City of Greenville mechanic attempted to repair the sweeper. Moore Depo. at 52.

Upon arrival, Plaintiff found the hopper in the down position and full of trash. Moore Depo. at 56. Moore diagnosed that the auxiliary motor failed to function because of a bad fly-wheel sensor. *Id.* at 67. The plaintiff also discovered that the wiring harness that goes from the auxiliary motor to the hopper was faulty. Moore Depo. at 70. By repairing the wiring and "crossing" out a solenoid with a jumper cable, the plaintiff was able to get power from a twelve volt battery. Moore Depo. at 74. Consequently, the starter could turn the hydraulic pump and raise the hopper. *Id.*

Plaintiff instructed the City's mechanic to hit the button that raises the hopper. Moore Depo. at 77. After the mechanic hit the switch, the hopper began to rise. *Id.* The plaintiff made an effort to open the back door of the hopper, but his efforts were unsuccessful. Moore Depo. at 78. After the hopper raised three to four feet, Plaintiff twice attempted to open the back door to dump the load. *Id.* Unable to use the sweeper's prop, Plaintiff unsuccessfully tried to use two 4x4 oak timbers and two blocks he obtained

from his truck to prop up the hopper. Moore Depo. at 82. Subsequently, Plaintiff continued his repair attempts while the hopper was braced by the 4x4s. Moore Depo. at 88.

The sweeper's owner manual contains safety warnings for proper operation of the hopper. Operator's Manual at 2-9. In bold print, the manual states, "Hopper loading changes the sweeper's center of gravity and can tip the machine, resulting in severe injury or property damage." *Id*. The manual continues, " always unlatch the rear door before you raise the hopper." *Id*. In addition, the manual states, "to prevent serious injury, use the door prop (Figure 2-16) to secure hopper door before moving behind or inside hopper. *Id*. Plaintiff recognized the risks associated with being under the hopper without the proper bar. Moore Depo. at 172.

The plaintiff quickly went under the hopper and screwed out the flywheel sensor. Moore Depo. at 90. After diagnosing and repairing the problem, Plaintiff then asked the City's mechanic to get in the cab of the sweeper and to turn the switch to see if the engine clicked. Moore Depo. at 91. Briefly after this point, the hopper fell causing injury to the plaintiff. *Id.* at 92. Plaintiff was unaware of whether the hopper fell when the City's mechanic stepped on the step leading to the sweeper's cab or when the mechanic sat down in the seat of the cab. *Id*.

Plaintiff unsuccessfully attempted to jump out from under the hopper. Moore Depo. at 92. The hopper hit the plaintiff in the chest, preventing his escape and pushed

the plaintiff through the metal parts of the truck into the front part of the truck between the seats. *Id.*

## Summary judgment standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex*, 477 U.S. 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by

. . . affidavits, or by the depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ. 56(c); *Matsushita*, 475 U.S. at 587, see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Clark & Coats, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Under Federal Rule of Civil Procedure 56(e), where the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R.Civ.P. 56(e).

On motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112-1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the mon-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is

5

not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D. Ala.), citing *Anderson*, 47 U.S. at 251-252.

### Legal Analysis

In his complaint, Plaintiff seeks to hold the defendant responsible for the October 12, 1995 accident under both Alabama and Mississippi law. He first asserts a violation under Alabama's Extended Manufacturer's Liability Doctrine. In Counts I through III, he claims: first, the defendant sold the Crosswind and its component parts in a defective condition, unreasonably dangerous to the defendant; second, the defendant negligently and/or wantonly designed, manufactured and sold a defective product, unreasonably dangerous the plaintiff; and, third, the defendant failed to warn the plaintiff of the alleged defective nature of the Crosswind and its components. Alternatively, Plaintiff asserts under Mississippi's Products Liability Law the same claims in Counts IV through VI.

The parties having agreed Mississippi law applies in this case, *see* February 8, 2000 Hearing Transcript, attached, Plaintiff's claims under Alabama law are dismissed. Accordingly, the Court proceeds with the remaining Counts IV through VI under Mississippi law.

Mississippi's statutory law addressing products liability is found at Miss. Code

6

Ann. §11-1-63 (1993). In its relevant part, the statute provides that a plaintiff, by preponderance of the evidence, shall recover if . . .

> (i)(2) the product was defective because it failed to contain adequate warnings or instructions, or (i)(3) the product was designed in a defective manner . . .; and (ii) the defective condition rendered the product unreasonably dangerous to the user or consumer; and (iii) the defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code Ann. §11-1-63(a). The statute further provides that in alleging that a product is defective pursuant to (a)(i)(2) of the section, the manufacturer shall not be held liable if the danger posed by the product is known or is open or obvious to the user or the user should have known of such danger. Miss. Code Ann. §11-1-63(e).

Finally, to prevail on a claim alleging alleging a violation under (a)(i)(3) must prove by a preponderance of the evidence that at the time the product left control of the manufacturer: (i) the manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known about the danger of which the damage resulted, and (ii) the product failed to function as expected and there existed a feasible design alternative that would have in reasonable probability prevented the harm. Miss. Code Ann. §11-1-63(f). A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers. *Id.*

The plaintiff falls short of meeting the statutory burden along with his burden in

overcoming a motion for summary judgment. Aside from the allegations listed in his complaint, the plaintiff offers only a perfunctory attempt at producing evidence in support of his position. In his reply to defendant's motion for summary judgment, plaintiff avers only that there are genuine issues of material fact for a jury to determine, but offers no specific, material facts showing a genuine issue for trial. Reply to Defendant's Motion for Summary Judgment.

The plaintiff in his deposition expressly acknowledged the danger of working under the unsecured hopper. Moreover, the owner's manual clearly warned of the possible consequences of not securing the hopper. Since the danger is "known or is open and obvious" to the user for the purposes of §11-1-63(e), the manufacturer cannot be held liable under §11-1-63(a)(i)(2). In addition, the plaintiff provides no evidence indicating that the defendant knew or should have known of any danger involving the hopper before the Crosswind left its control in order to meet the requirement of §11-1-63(f)(i). Therefore, the defendant cannot be held liable under §11-1-63(a)(i)(3).

The plaintiff's only other attempt at producing evidence to support his claim is an affidavit by his expert witness, Robert T. Tolbert, a consultant engineer. Tolbert conclusory alleges that the piece of machinery (the Crosswind) was defectively designed in several respects, which led to the accident. Affadavit of Robert T. Tolbert. Tolbert also states he will submit opinion at trial that the design is defective, and that there are alternative designs that are much more preferable and would have avoided this accident

and injury. *Id.* However, conclusory statements have yet to be supported by evidence submitted by Plaintiff.

A mere promise to produce admissible evidence at trial does not suffice to thwart the summary judgment ax. See *Garside v. Osco Drug Inc.*, 895 F.2d 46, 49 (1st Cir. 1990). The 11th Circuit had held that the conclusory allegations without specific supporting facts have no probative value. *Evers v. General Motors Corp.*, 770 F.2d 984,986 (11th Cir. 1985). In *Evers*, the court explained that a non-movant party may not avoid summary judgment by submitting the affidavit of an expert witness that fails to provide specific facts from the record in support of his conclusions.

Mr. Tolbert lists several alleged defects with the Crosswind, but he fails to offer any specifics as to how each of these alleged defects could have contributed to the accident as required by §11-1-63(a)(iii). *See* Tolbert Affidavit; *see also* Miss. Code. Ann. § 11-1-63(a)(iii). Also, the plaintiff offers no proof that the defendant knew or should have known of any danger involving the hopper before the Crosswind left its control (doc 45) in order to meet the requirement of §11-1-63(f)(i). Finally, though he states there are several reasonable alternatives, the expert neither specifies what those designs are or describes the reasonable probability of preventing harm without impairing the utility, usefulness, practicality or desirability of the sweeper pursuant to §11-1-63(f)(ii).

## Conclusion

Based upon the foregoing analysis, the court finds that Elgin Sweeper Company

has satisfied its burden of "affirmatively [demonstrating] the absence of a genuine issue of material fact." *See United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*) (*citations omitted*). The plaintiffs have not come "forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id*. No genuine issues of material fact remain. Accordingly, summary judgment is **GRANTED** in favor Elgin Sweeper Company by a separate order issued this day.

**DONE** and **ORDERED** this the ___24___ day of February, 2000.

                                                Inge P. Johnson
                                                U.S. District Judge

MOORE v. ELGIN SWEEPER CO., INC., ET AL.

(Hearing held February 8, 2000 before Honorable Inge Johnson:)

THE COURT: If I understand correctly, you both agree that Mississippi law applies?

MR. COLVIN: Yes.

MR. CHANDLER: Yes, Your Honor.

THE COURT: Would that be Section 11-1-63 of the Mississippi code annotated? Would that be it?

MR. COLVIN: And cases related to it, yes, Your Honor.

MR. CHANDLER: Yes.

THE COURT: Okay. I just want to make sure that we're in agreement that that's what the law is that I should look at.

MR. COLVIN: We are.

MR. CHANDLER: Yes.

THE COURT: Okay.

(Excerpt concluded.)